**STATE of Texas, Appellant,**

v.

**NATIONAL LLOYDS INSURANCE COM-PANY, Appellee.**

**No. 11019.**

Court of Civil Appeals of Texas.

Austin.

Jan. 23, 1963.

Rehearing Denied Feb. 13, 1963.

Will Wilson, Atty. Gen., Bob E. Shannon, Asst. Atty. Gen., Austin, for appellant.

F. L. Kuykendall, Austin, for appellee.

HUGHES, Justice.

National Lloyds Insurance Company, having been granted permission by the Legislature, brought suit against the State to recover $6,912.35, alleged to be excess taxes paid the State under Art. 7064, Vernon's Ann.Civ.St. In a non-jury trial, judgment was rendered against the State for $6,554.-50.[1]

The basic facts were stipulated and are: "3. Under the provisions of Article 7064, Revised Civil Statutes of Texas of 1925, as amended, National Lloyds became liable during the year 1959 for taxes at the rate of 1.1% on gross receipts received by it during said year after an allowance for returned premiums and dividends paid to policy-holders in National Lloyds; that the amount of such tax for the year 1959 was $8,168.37, to which a credit was allowed in the sum of $274.84 for examination fees incurred by the State

---

1. Appellee does not complain of the amount of the judgment.

Board of Insurance, leaving a net amount which was paid by National Lloyds as taxes for 1959 in the sum of $7,893.53. Under the provisions of Article 5.12, Insurance Code [V.A.T. S.], National Lloyds paid for the year 1959 the Motor Vehicle Maintenance Tax of .06 of 1% on gross receipts of $742,007.07, which tax amounted to $445.20, and which tax was paid by National Lloyds.

"4. During the year of 1960 National Lloyds cancelled policies of insurance and made refunds of premiums and paid dividends to its policyholders on policies written during 1959 in an amount which exceeded its gross receipts by $595,863.93 and on which refunded premiums and dividends National Lloyds had paid the gross receipts tax for the year 1959; that 1.1% of $595,863.93 is $6,554.50, which refund National Lloyds is claiming it is entitled to in this suit, together with a refund of .06 of 1% of $596,423.49 paid as a maintenance tax for the year 1959, as required by Article 5.12 of the Insurance Code, which amount is $357.-85, making a total refund claimed by plaintiff in the above styled and numbered cause of $6,912.35."

The portion of Art. 7064, pertinent here, reads:

"Every insurance corporation * * * shall report to the Board of Insurance Commissioners the gross amount of premiums received upon property located in this State or on risks located in this State during the preceding year, and each of such insurance carriers shall pay an annual tax upon such gross premium receipts of 3.85%, provided that any such insurance carriers doing two (2) or more kinds of insurance businesses herein referred to shall pay the tax herein levied upon its gross premiums received from each of said kinds of business; and the gross premium receipts where referred to in this law shall be the total gross amount of premiums received on each and every kind of insurance or risk written, except premiums received from other licensed companies for reinsurance, less return premiums and dividends paid policyholders, but there shall be no deduction for premiums paid for reinsurance. The gross premium receipts, as above defined, shall be reported and shown as the premium receipts in the report to the Board of Insurance Commissioners by the insurance carriers, upon the sworn statements of two (2) principal officers of such carriers. Upon receipt by the Board of Insurance Commissioners of the sworn statements, showing the gross premium receipts by such insurance carriers, the Board of Insurance Commissioners shall certify to the State Treasurer the amount of taxes due by each insurance carrier which tax shall be paid to the State Treasurer on or before the first day of March following, and the Treasurer shall issue his receipt to such carrier, which shall be evidence of the payment of such taxes. No such insurance carrier shall receive a permit to do business in this State until all such taxes are paid." [2]

The question presented is whether or not return premiums paid by the company subsequent to the taxable year in which they were collected, and upon which taxes have been paid, can be used as a basis for claiming an overpayment of taxes during the taxable year. [3]

The State says, "Since the tax is calculable on an annual or yearly basis, then the 'less return premiums * * * paid policyholders * * *' plainly refers to return premiums made within that same year."

2. The rate of tax may be reduced under other provisions of the Statute, as here, to 1.1%.

3. The parties concede that the taxable year is a calendar year.

As an alternative, the State contends that if the above statute is ambiguous in this respect, then the construction placed upon it by the insurance department of the State should control.

It is our opinion that the statute is ambiguous. This conclusion is reached, not so much from the language of the statute as from the language omitted from it. The statutory formula, applicable here, "gross amount of premiums received * * * less return premiums" is simple and plain as far as it goes. The trouble is, it does not place a time limit on premium returns for tax purposes. A practical limit, however, would be the expiration date of the policy of insurance.

Under the States' contention, an insurer might collect enormous premiums on December 31st and return their major portion on next January 1st, the following day, and be liable for taxes on the entire amount received and not on the difference between the premiums received and premiums returned, as the statute clearly provides.

We believe that our finding of ambiguity in the statute is sustained by the departmental construction of it and upon which the State relies. This construction is that while no cash refund of taxes paid under the circumstances of this case can be made, that, nevertheless, such overpayment of taxes can be credited on taxes accruing the following year. We quote from the testimony of Miss Virginia Gardner, tax analyst for the State Board of Insurance:

"Q All right. Now, let's assume further that the premiums for the

policies written in 1960 were $50,-000.00, but the returned premiums made in 1960 on 1959 policies amounted to $50,000.00. The 1960 taxes would be one percent of $50,000.00 on written premiums, or $500.00, but a credit of one percent of $50,000.00 returned premiums, or $500.00, would be allowed, so that there would be no tax due or payable when the Company files its 1960 report on or before

March 1, 1961; that is correct?

"A Yes sir; so far, so good."

Miss Gardner's testimony regarding the practice of the department in ascertaining taxes due under this statute were based, in part, upon the assumptions of counsel for appellee in interrogating her. These assumptions and resultant conclusions, the validity of which was affirmed by Miss Gardner, are copied below.[4]

Miss Gardner testified:

"A * * * We consider each year a separate entity. The taxes, returned premiums and all are for one year. At the end of the year, if the returned premiums are greater than the direct premiums, there is no tax, but there is no carry-over. Each year is a separate entity unto itself."

Miss Gardner also testified that if in any calendar year the returned premiums exceeded the gross premiums that no tax was owed and no tax credit was allowed or carried forward or backward, and no refund

---

4. Assume taxable premiums in 1959 were $200,000.00. Assume rate 1%. Tax would be $2,000.00. Assume taxes were paid when report filed on or before March 1, 1960.

Assume premiums during 1960 were $200,000.00, but return premiums made in 1960 on 1959 policies amounted to $50,000.00.

The 1960 taxes would be 1% of $200,-000.00, or $2,000.00 but a credit of 1% of $50,000.00, or a credit of $500.00, would be allowed, so that the tax to be

paid on or before March 1, 1961, would be $1,500.00.

Assume that the premiums from policies written in 1960 were $50,000.00, but return premiums made in 1960 on 1959 policies amounted to $50,000.00.

The 1960 taxes would be 1% of $50,-000.00 on written premiums, or $500.00, but a credit of 1% of $50,000.00, or $500.00, would be allowed, so that there would be no tax due or payable when the company files its 1960 report on or before March 1, 1961.

was made. She further testified that since 1953 she had checked about 9000 tax returns filed under this statute and that less than two or three requests per year were made for refunds under these circumstances.

It is, as stated, our opinion that the departmental practice under this statute affirms its ambiguity.

There is no authority in the statute for a refund of a tax overpayment. Neither is there authority in the statute for a tax credit. If it is legal to give one, it is legal to give the other. Certainly, a rule of fairness requires that if a credit is allowed for a tax overpayment, a refund of such overpayment should be made. The financial impact upon the State and the taxpayer are identical in each instance.

■■■ We believe that the department is correct in considering each calendar year a separate entity in the assessment and calculation of taxes due under this statute. We differ only in the method of treating the business transacted by the taxpayer. The department operates on a simple income and outgo basis, within the taxable year, as far as premiums are concerned. The State never loses under this practice, but frequently the taxpayer does. If a taxpayer pays more taxes than he justly owes, this is unfair; and no ambiguous statute should be construed to bring about this result.

Our view of the statute is that it should be construed to apply to each individual risk assumed by the insurance company for which a premium is charged. In this manner, the State will receive and the taxpayer will pay the tax due on the net premium retained by the company. This is all that the statute contemplates. It, of course, cannot be assumed that any premium returns will be made, and insurance companies will continue to report and pay the tax due on all premiums received, less such refunds as may have been made before report time, and subject to their right to credit or refund for premiums subsequently returned.

Believing that Art. 7064 is ambiguous to the extent indicated, we have construed it to achieve its purpose, and in a manner fair and equitable to both the State and the taxpayer. We have been aided in this construction by the departmental practice and construction. We have followed the principle established by the department in allowing credit on taxes subsequently accruing for return of premiums collected in a prior year. We have merely made a practical extension of this principle so as to include a cash refund of such overpaid taxes. The method of making such refund except, as here, by suit authorized by the Legislature, is not before us.

The judgment of the Trial Court is affirmed.

Affirmed.

PHILLIPS, J., not sitting.